# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 18-cv-60912-BLOOM/Valle

TROPICAL PARADISE RESORTS, LLC, d/b/a
RODEWAY INN & SUITES, a Florida Limited
Liability Company,

      Plaintiff,

v.

JBSHBM, LLC, a Florida Limited Liability
Company, and POINT CONVERSIONS, LLC, a
Delaware Limited Liability Company,

      Defendants.

_____

## <u>ORDER ON MOTIONS TO DISMISS</u>

**THIS CAUSE** is before the Court upon Defendant JBSHBM, LLC's ("JBSHBM") Motion to Dismiss Amended Complaint, ECF No. [22], and Plaintiff/Counterclaim Defendant Tropical Paradise Resorts, LLC, d/b/a Rodeway Inn & Suites' ("Rodeway") and Counterclaim Defendant Choice Hotels International, Inc.'s ("Choice Hotels") Motion to Dismiss the Amended Counterclaim, ECF No. [56], (collectively, the "Motions"). The Court has carefully reviewed the Motions, all opposing and supporting materials, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motions are granted**.**

## I.      BACKGROUND

Rodeway commenced this action for declaratory judgment and damages against Defendants JBSHBM and Point Conversions, LLC ("Point Conversions"), (collectively, "Defendants"). *See* ECF No. [20]. According to the Amended Complaint, JBSHBM is the owner of 31 patents relating to loyalty reward point innovations, including United States Patent

No. 9,704,174 ("the 174 patent"). *Id.* at ¶ 18. In July 2017, JBSHBM contacted several Choice Hotels franchisees by letter claiming that they were infringing on JBSHBM's patents. *Id.* at ¶ 22. The letters JBSHBM sent to the hotels stated: "You are believed to be infringing on loyalty-program specific patents that JBSHBM LLC owns" and "Please understand we are placing you on notice that your hotel is believed to be infringing our patents." *Id.* at ¶ 23.

JBSHBM contends that on September 1, 2017, it entered into an agreement with Point Conversions, granting Point Conversions the exclusive right to use JBSHBM's patents. *Id.* at ¶ 20. On February 18, 2018, Point Conversions sent a demand letter to Rodeway (the "February 18th Letter"), attaching a letter JBSHBM had directed to certain Choice hotel franchisees. *Id.* at ¶¶ 27–28. The February 18th Letter demanded that Rodeway cease the activities that allegedly infringed on Point Conversions' exclusive rights to use JBSHBM's 31 patents. *Id.* at ¶ 29. Rodeway did not cease or alter its activities upon receipt of the February 18th Letter. *Id.* at ¶ 34.

JBSHBM filed with this Court a letter from JBSHBM to Rodeway dated June 8, 2018 (the "Covenant") as an attachment to a declaration by Brian Bucheit, a manager of JBSHBM. *See* ECF No. [22-1]. In the Covenant, JBSHBM "covenant[ed] not to sue Rodeway for infringement of the [174 patent] under the Patent Act now or in the future . . ." *Id.* JBSHBM also asserted "that it does not presently have any right to sue Rodeway under the [174 patent]" however, "[t]o the extent that this speculated right exists and to the extent that JBSHBM currently possesses this speculated right, this covenant applies." *Id.*

Rodeway fears that JBSHBM will sue it for infringement of the 174 patent. ECF No. [20] at ¶ 40. Rodeway seeks declaratory judgments against JBSHBM of non-infringement of the 174 patent (Count 1) and that the 174 patent is invalid (Count 2) and unenforceable (Count 3). Rodeway also seeks to recover damages against JBSHBM pursuant to Fla. Stat. §§ 501.991 et

seq. for bad faith assertions of patent infringement, in violation of the Patent Troll Prevention Act (Count 4), and damages against Point Conversions for conspiracy to violate the Patent Troll Prevention Act (Count 5).

Point Conversions has brought a counterclaim against Rodeway and Choice Hotels. ECF No. [50]. According to Point Conversions' First Amended Counterclaim, Point Conversions has the exclusive rights to the only software legally permitted to convert reward points across program boundaries. *Id.* at ¶¶ 15–16. Rodeway and Choice Hotels use software to accept, distribute, or exchange points across boundaries, and do not inform their customers that using the software subjects customers to legal liability for potential intellectual property violations. *Id.* at ¶¶ 49, 51. Point Conversions asserts state law FDUTPA and conspiracy to commit FDUTPA claims based on the diminished value of Rodeway's and Choice Hotels' products resulting from the failure to inform customers of the litigation liability. *Id* at ¶¶ 173–338. It also seeks declaratory judgment that the February 18th Letter was sent by Point Conversions in good faith and does not trigger an active case or controversy for patent infringement. *Id.* at ¶¶ 339–354.

## II.     LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(1) raises the issue of subject matter jurisdiction. Federal courts have limited subject matter jurisdiction, and the party invoking the court's jurisdiction bears the burden of proving it exists. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002). Federal courts are empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution. *Lance v. Coffman*, 549 U.S. 437, 439 (2007). Article III of the Constitution confines the "Judicial Power" of the United States to "Cases" and "Controversies." U.S. Const. art. III, § 2. Federal courts "have always taken this to mean cases and controversies of the sort traditionally amenable to, and resolved by,

the judicial process." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The law of Article III standing ... serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013).

Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201. Pursuant to the plain language, a district court's ability to grant relief under the Act is permissive, and while the Act "gives the federal courts competence to make a declaration of rights[,] it does not impose a duty to do so." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (citing *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942)). Accordingly, courts retain broad discretion over whether or not to exercise jurisdiction under the Act. *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 568 F. Supp. 2d 1369, 1374 (M.D. Fla. 2008). Further, the Act confers jurisdiction only "[i]n a case of actual controversy." *See* 28 U.S.C. § 2201. This actual controversy requirement "is jurisdictional and, thus, 'a threshold question in an action for declaratory relief must be whether a justiciable controversy exists.'" *Odyssey Marine Exploration, Inc. v. Unidentified, Shipwrecked Vessel or Vessels*, 512 Fed. Appx. 890, 895 (11th Cir. 2013) (quoting *U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co.*, 931 F.2d 744, 747 (11th Cir. 1991)).

## III.    DISCUSSION

### a. Rodeway's Amended Complaint

#### i. Federal Claims for Declaratory Judgment (Counts 1, 2, and 3)

Rodeway seeks declaratory judgment against JBSHBM, that Rodeway is not infringing on the 174 patent, and that the 174 patent is invalid and unenforceable. ECF No. [20] at ¶¶ 42–70. JBSHBM moved to dismiss the declaratory judgment claims based, in part, on the Covenant, arguing that Rodeway lacks standing to assert the claims for declaratory relief because there is no longer a case or controversy between Rodeway and JBSHBM. Rodeway counters that the Court may not consider Brian Bucheit's declaration and the Covenant attached thereto at this stage because they are outside the four corners of the Amended Complaint.

As an initial matter, the Court notes that the legal discussion in the parties' briefs on this issue is couched in terms of Federal Rules of Civil Procedure 12(b)(6). However, under a factual attack to subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), "the district court may consider extrinsic evidence such as testimony and affidavits." *Morrison v. Amway Corporation,* 323 F.3d 920, 924 n.5 (11th Cir. 2003). Furthermore, the Eleventh Circuit has explained:

> [W]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to independently weigh facts, and may proceed as it never could under Rule 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction-its very power to hear the case-there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue.

*Id.* at 925 (citing *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990)). Accordingly, the Court can consider the Covenant without converting JBSHBM's motion into one for summary judgment.[1]

Having concluded that the Court may properly consider the Covenant, the Court finds that the Covenant strips the Court of subject matter jurisdiction over Rodeway's declaratory judgment claims. The Declaratory Judgment Act provides in relevant part:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a)

"Actual controversy" refers to any controversy for which there is Article III jurisdiction. *Caraco Pharm. Labs, Ltd. v. Forest Labs., Inc.,* 527 F.3d 1278, 1290 (Fed. Cir. 2008). In making this determination, the Federal Circuit has instructed district courts that the dispute between the parties must be "definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (quoting *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007) (internal quotation marks omitted)). District courts must look at "all the circumstances to determine whether an action for a declaratory judgment of non-infringement or patent invalidity presents a justiciable Article III controversy." *Id.* (quoting *Teva Pharms. USA,*

---

[1] The Court would reach the same result applying the standard for 12(b)(6) motions contemplated in the parties' briefing. A Court may consider a document attached to a 12(b)(6) motion to dismiss "without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002). In this context, "undisputed" means that the authenticity of the document is not challenged. *Id.* JBSHBM does not dispute that the Covenant is central its claims. JBSHBM contests the legal effect of the Covenant, but that does not amount to a challenge to the authenticity of the Covenant.

*Inc. v. Novartis Pharms. Corp.,* 482 F.3d 1330, 1339 (Fed. Cir. 2007) (internal quotation marks omitted)). Specifically, "to establish an injury in fact traceable to the patentee, a declaratory judgment plaintiff must allege both (1) an affirmative act by the patentee related to the enforcement of his patent rights, *SanDisk Corp. v. STMicroelecs., Inc.,* 480 F.3d 1372, 1380–81 (Fed. Cir. 2007), and (2) meaningful preparation to conduct potentially infringing activity, *Cat Tech LLC v. TubeMaster, Inc.,* 528 F.3d 871, 879 (Fed. Cir. 2008)." *Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*, 689 F.3d 1303, 1318 (Fed. Cir. 2012). "The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory judgment was filed and that it has continued since." *Benitec Australia, Ltd. v. Nucleonics, Inc.,* 495 F.3d 1340, 1344 (Fed. Cir. 2007).

The Federal Circuit has held in a line of cases beginning with *Super Sack Manufacturing Corp. v. Chase Packaging Corp.,* 57 F.3d 1054, 1060 (Fed. Cir. 1995), that a covenant not to sue for patent infringement divests the trial court of subject matter jurisdiction over claims stemming from the infringement of a patent, because the covenant eliminates any case or controversy between the parties. *See Intellectual Prop. Dev., Inc. v. TCI Cablevision of Calif., Inc.,* 248 F.3d 1333, 1342 (Fed. Cir. 2001) (statement of non-liability divested the district court of Article III jurisdiction); *Amana Refrigeration, Inc. v. Quadlux, Inc.,* 172 F.3d 852, 855 (Fed. Cir. 1999) ("a covenant not to sue for any infringing acts involving products 'made, sold, or used' on or before the filing date is sufficient to divest a trial court of jurisdiction over a declaratory judgment action."); *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1346 (Fed. Cir. 2010) (when a covenant not to sue "extinguishe[s] any current or future case or controversy between the parties, it divests the district court of subject matter jurisdiction."

Here, JBSHBM's Covenant avowed that JBSHBM would not sue Rodeway for any acts of infringement of the 174 patent. Rodeway points to no limiting language in the Covenant that would allow JBSHBM to initiate a lawsuit against Rodeway for infringement of the 174 patent in the future. Rather, Rodeway contends that because the Covenant states that JBSHBM does not presently have any right to sue Rodeway it raises an issue of material fact as to who has the right to sue for infringement of the 174 patent. The Court is not persuaded by this argument. It is critical here that JBSHBM avows not to bring a lawsuit against Rodeway to the extent that JBSHBM otherwise had the right to do so. Thus, if prior to the Covenant JBSHBM *did* have the right to sue for infringement of the 174 patent, then the Covenant extinguished any current or future case or controversy between the parties. Alternatively, if JBSHBM did *not* have that right, then there can be no case or controversy between JBSHBM and Rodeway irrespective of the Covenant. Accordingly, Counts 1, 2, and 3 are dismissed for lack of subject-matter jurisdiction.

### ii. State Law Claim Alleging a Violation of the Patent Troll Prevention Act (Counts 4 and 5)

Counts 4 and 5 bring state law claims for violation of, and conspiracy to violate, the Patent Troll Prevention Act. Rodeway alleges that this Court has supplemental jurisdiction over Counts 4 and 5 of this action pursuant to 28 U.S.C. § 1367(a). ECF No. [20] at ¶ 10. Federal law permits this court to decline to exercise supplemental jurisdiction over state law claims where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U.S. 715 (1966). Since the court has dismissed all of Rodeway's federal claims, "the decision whether or not to exercise pendent jurisdiction over state law claims is within its discretion." *Rice v. Branigar Organization, Inc.,* 922 F.2d 788, 792 (11th Cir. 1991). The Eleventh Circuit has provided guidance that "dismissal of state law claims [is] strongly encouraged when federal law claims are dismissed prior to trial."

*Baggett v. First Nat'l Bank*, 117 F.3d 1342, 1353 (11th Cir. 1997) (*citing Gibbs,* 383 U.S. at 726

("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a

jurisdictional sense, the state claims should be dismissed as well")).  Accordingly, the Court

declines to exercise jurisdiction over Rodeway's state law claims which shall be dismissed.[2]

### b.  Point Conversions' Counterclaims

#### i.  State Law FDUTPA Counterclaims (Counts I, II, and III)

Federal Circuit law governs whether federal patent law preempts state law claims.  *See*

*Ultra–Precision Mfg., Ltd. v. Ford Motor Co.,* 411 F.3d at 1369, 1376 (Fed. Cir. 2005).  In the

field of intellectual property, as in other contexts, "the question of whether federal law preempts

state law involves a consideration of whether that law stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress." *Aronson v.*

*Quick Point Pencil Co.,* 440 U.S. 257, 262 (1979).  If a state law "offers 'patent-like protection'

to discoveries unprotected under federal patent law," it frustrates the purposes the federal patent

system, and is thus preempted by federal patent law.  *Ultra–Precision.,* 411 F.3d 1376 (citing

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 156 (1989)).

In assessing whether a state claim seeks "patent-like protection," a court must engage in

an ad hoc inquiry, focusing on the conduct as pled in the complaint, that forms that basis of the

state law claim.  *See Hunter Douglas, Inc. v. Harmonic Design, Inc.,* 153 F.3d 1318, 1335 (Fed.

---

[2] Pending before the Court is Rodeway's Motion for Leave to file a Second Amended Complaint, which would add five entities as defendants and a state law FDUTPA claim.  *See* ECF No. [81].  A potential lawsuit for infringement of the 174 patent by any of the five additional entities against Rodeway is far too speculative to create a case or controversy. In particular, Rodeway has not alleged an affirmative act by any of the five entities related to the enforcement of their patent rights.  Additionally, the Court would decline to exercise supplemental jurisdiction over the FDUTPA claim for the same reasons as explained herein in Section III.a.ii.  Thus, amending the complaint would be futile.  *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004) ("a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile.").

Cir. 1998). "If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law." *Id.* If, by contrast, "the conduct is not so protected or governed, then the remedy is not preempted." *Id.*

Here, a review of Point Conversions' pleadings shows that its state law counterclaims are based on the allegation that Rodeway and Choice Hotels misled customers by omitting that the use of their points-based reward program exposed customers to litigation liability. *See* ECF No. [50].

The Court finds that Point Conversions' state law counterclaims necessitate a determination of patent law issues. Judge Altonaga reached a similar conclusion in remanding to state court an action involving the same nucleus of facts brought by Point Conversions against Rodeway for state law claims:

> Before [Point Conversions] can obtain relief on any of its claims, a court will necessarily have to determine whether the licensed patents from JBSHBM are valid. If a court concludes [Rodeway] did not infringe [Point Conversions'] licensed patents, [Rodeway] cannot have deprived [Point Conversions] of any intellectual property right [Point Conversions] asserts, thereby defeating all of [Rodeway's] claims.

*Point Conversions, LLC v. Tropical Paradise Resorts, LLC*, No. 18-cv-60809 at 5 (S.D. Fla. June 13, 2018). Here too, Point Conversions' FDUTPA claims require a determination of whether the patents at issue are valid to ascertain whether the value of the products Rodeway and Choice Hotels provided to their customers was diminished by the alleged "litigation liability." Accordingly, Point Conversions' state law counterclaims are preempted. *See Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1335 (Fed. Cir. 1998) ("If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law."),

10

*overruled on other grounds, Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed.

Cir. 1999); *Clearplay, Inc. v. Nissim Corp.*, 555 F. Supp. 2d 1318, 1331 (S.D. Fla. 2008)

(dismissing plaintiff's state-tort claims for tortious interference with a contractual relationship

and tortious interference business relationships as preempted by federal patent law).

### ii.   Federal Claims for Declaratory Judgment (Counts IV and V)

Point Conversions seeks declaratory judgment that the February 18th Letter it sent to

Rodeway does not trigger an active case or controversy for patent infringement (Count V) and

that the February 18th Letter was sent in good faith (Count IV).  The Court finds that no Article

III controversy exists with respect to either counterclaim.

The Federal Circuit has described the scenario in the patent context that led to the

enactment of the Declaratory Judgment Act.

> [A] patent owner engages in a *danse macabre,* brandishing a Damoclean threat
> with a sheathed sword.... Before the Act, competitors victimized by that tactic
> were rendered helpless and immobile so long as the patent owner refused to grasp
> the nettle and sue. After the Act, those competitors were no longer restricted to an
> *in terrorem* choice between the incurrence of a growing potential liability for
> patent infringement and abandonment of their enterprises; they could clear the air
> by suing for a judgment that would settle the conflict of interests. The sole
> requirement for jurisdiction under the Act is that the conflict be real and
> immediate, i.e., that there be a true, actual 'controversy' required by the Act.

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 734–35 (Fed. Cir. 1988)

(citations omitted).

Point Conversions' request for declaratory relief in Count V does not accord with the

purpose of the Declaratory Judgment Act.  Point Conversions is not seeking to "clear the air" to

avoid further victimization by a patent owner.  Indeed, Point Conversions does not allege that

Rodeway or Choice Hotels is threatening litigation for Point Conversions' infringement of a

patent.  Instead, Point Conversions is attempting to insulate itself from being the subject of the

type of declaratory judgment for patent violations that was contemplated by the Declaratory

Relief Act, as described by the Federal Circuit above. The Court sees no useful purpose in considering a claim for declaratory judgment to avoid the prospect of a potential future claim for declaratory judgment against Point Conversions. *See Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1216 (S.D. Fla. 2011) ("If a district court determines that a complaint requesting a declaratory judgment will not serve a useful purpose, the court cannot be required to proceed to the merits before dismissing the complaint.") Moreover, the potential of a declaratory relief claim against Point Conversions is too speculative to amount to a present case or controversy, particularly because there is no allegation that Counterclaim Defendants or any other entity intends to initiate such a lawsuit against Point Conversions.

As to Count IV, Point Conversions requests a declaration that the February 18th Letter was sent in "good faith," and contends that without such a declaration it will find itself defending lawsuits in state and federal court. Whether the February 18 Letter was sent in "good faith" is relevant to the Patent Troll Prevention Act, which prohibits persons from "send[ing] a demand letter to a target which makes a bad faith assertion of patent infringement." Fla. Stat. § 501.993. However, there is presently no case or controversy as to whether Point Conversions sent the letter in good faith. Moreover, a finding that Point Conversions sent the letter in good faith would not necessarily settle the legal relations between the parties. *See Miracle 7, Inc. v. Halo Couture, LLC*, No. 13-61643-CIV, 2014 WL 11696708, at *2 (S.D. Fla. Jan. 17, 2014) ("A declaratory judgment should be granted when the judgment will serve a *useful purpose* in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings.") (internal citation omitted). The only claim asserted by Rodeway against Point Conversions in the First Amended Complaint is for conspiracy to commit a violation of the Patent Troll Prevention Act.

Rodeway alleges that "Point Conversions obtained a copy of the infringement notice letter from JBSHBM and thus is in contact with JBSHBM as to JBSHBM's accusations regarding patent infringement. As such, Point Conversions' conduct at [sic] constitutes a conspiracy to commit a bad faith assertion of patent infringement in violation of the Patent Troll Prevention Act." ECF No. [20] at ¶ 104. A determination by this Court as to whether Point Conversions acted in good faith is not necessarily dispositive of the conspiracy claim, as liability could extend to Point Conversions based on the bad faith of an alleged co-conspirator. Accordingly, Point Conversions' counterclaims are dismissed.

JBSHBM has also brought a Motion for Rule 11 Sanctions against Rodeway, Reed Smith LLP, Edward Mullins, Ana Barton, and John Bovitch arguing that Rodeway's declaratory judgment claims were frivolous and Patent Troll Prevention Act claim has no merit. ECF No. [42]. JBSHBM has failed to show that Rodeway's claims lack a reasonable factual basis, that Rodeway's legal theories lack a reasonable chance of success, or that Rodeway filed its claims in bad faith or for an improper purpose. *See Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993). JBSHBM contends that Rodeway's claims fail because JBSHBM never issued demands directly to Roadway. However, Rodeway has alleged that JBSHBM and Point Conversions conspired together to intimidate Rodeway into paying monies for allegedly infringing JBSHBM's patents, and that Point Conversions sent its letter to Rodeway in furtherance of that conspiracy. ECF No. [20] at ¶ 93. The Court is unpersuaded that Rodeway's legal theories based on these allegations lack a reasonable chance of success. JBSHBM also argues that no case or controversy existed because it covenanted not to sue Rodeway for patent infringement. The Court rejects JBSHBM's argument, as the covenant not to sue was only provided after Rodeway initiated its lawsuit. Accordingly, JBSHBM's Motion for Rule 11 Sanctions is denied.

## IV.    CONCLUSION

For the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant JBSHBM, LLC's Motion to Dismiss Amended Complaint, **ECF No. [22], is GRANTED**.  The First Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

2. Plaintiff/Counterclaim Defendant Tropical Paradise Resorts, LLC, d/b/a Rodeway Inn & Suites and Counterclaim Defendant Choice Hotels International, Inc.'s Motion to Dismiss the Amended Counterclaim, **ECF No. [56]**, is **GRANTED**. Defendant/Counterclaim Plaintiff Point Conversions Inc.'s First Amended Counterclaim is **DISMISSED WITHOUT PREJUDICE**.

3. Defendant JBSHBM, LLC's Motion for Sanctions Against Tropical Paradise Resorts, LLC, Reed Smith LLP, Edwards Mullins, Ana Barton, and John Bovitch, **ECF No. [42]**, is **DENIED**.

4. To the extent not otherwise disposed of, all pending motions are **DENIED** as moot, and all pending deadlines are **VACATED**.

5. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 9th day of October, 2018.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record