UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-60912-BLOOM/VALLE

TROPICAL PARADISE RESORTS, LLC, d/b/a
RODEWAY INN & SUITES, a Florida Limited
Liability Company,

      Plaintiff,

v.

JBSHBM, LLC, a Florida Limited Liability
Company, and POINT CONVERSIONS, LLC, a
Delaware Limited Liability Company,

Defendants.
_____

POINT CONVERSIONS, LLC, a Delaware
Limited Liability Company,

      Counterclaim Plaintiff,

v.

TROPICAL PARADISE RESORTS, LLC,
d/b/a RODEWAY INN & SUITES, a Florida Limited
Liability Company, and CHOICE HOTELS
INTERNATIONAL, INC., a Maryland Corporation,

Counterclaim Defendants.
_____

## **REPORT AND RECOMMENDATION TO DISTRICT JUDGE**

THIS MATTER is before the Court upon Plaintiff/Counter Defendant Tropical Paradise

Resorts LLC's ("Rodeway") and Counterclaim Defendant Choice Hotels International, Inc.'s

("Choice," and together with Rodeway, the "Counterclaim Defendant's") Motion for Prevailing Party

Fees and Costs pursuant to Florida's Deceptive and Unfair Trade Practices Act (ECF No. 147) (the

"Motion").  United States District Judge Beth Bloom has referred the Motion to the undersigned for a Report and Recommendation.  (ECF No. 148).

Having reviewed the Motion, Defendant/Counterclaim Plaintiff Point Conversions, LLC's Response in Opposition to the Motion (ECF No. 151), Counterclaim Defendants' Reply (ECF No. 152), the Notices of Supplemental Authority (ECF Nos. 153, 154), and the Notice of Previously Awarded Fees and Costs (ECF No. 160), and being otherwise duly advised in the matter, the undersigned recommends that the Motion be **GRANTED IN PART AND DENIED IN PART**.  As discussed below, the undersigned recommends that the Counterclaim Defendants be awarded $233,657.73 in attorneys' fees and $16,037.52 in costs.

## I.     BACKGROUND

The procedural history of this case is set forth in the prior opinions of the District Court and Eleventh Circuit, which are incorporated by reference.  *See* (ECF Nos. 112, 142); *Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, No. 18-CV-60912, 2018 WL 4932282, at *1 (S.D. Fla. Oct. 10, 2018)*, aff'd sub nom. Tropical Paradise Resorts, LLC v. Point Conversions, LLC,* 806 F. App'x 966 (11th Cir. 2020); *see also In re Point Conversions, LLC*, 830 F. App'x 319, 320 (Fed. Cir. 2020); *Point Conversions, LLC v. Lopane*, No. 20-CV-61549, 2021 WL 328533, at *2 (S.D. Fla. Jan. 8, 2021), *report and recommendation adopted*, 2021 WL 327536 (S.D. Fla. Feb. 1, 2021) (discussing Point Conversions' litigation history, including this case and other actions in federal and state courts). Below is a summary of the proceedings relevant to the instant Motion.

Rodeway is a franchisee of Choice, a hotel franchisor for more than 11 hotel brands, with approximately 6,400 properties worldwide.  (ECF No. 20 ¶¶ 15-16).  On April 20, 2018, Rodeway commenced this action for declaratory judgment and damages against Defendants JBSHBM, LLC ("JBSHBM") and Point Conversions, LLC ("Point Conversions") (collectively, "Defendants")

pursuant to Fla. Stat. §§ 501.991 et seq. for violations of the Patent Troll Prevention Act and conspiracy to violate the Patent Troll Prevention Act.  *See* (ECF No. 1).

On May 31, 2018, Rodeway filed a First Amended Complaint.  *See* (ECF No. 20).  The First Amended Complaint alleged that Defendant JBSHBM is the owner of 31 patents relating to loyalty reward point innovations, including United States Patent No. 9,704,174 ("the 174 patent").  Rodeway alleged concern that JBSHBM would sue it for infringement of the 174 patent.  *Id.* ¶ 40; *see also Point Conversion, LLC v. Tropical Paradise Resorts*, *LLC*, 339 F. Supp. 3d 1350 (S.D. Fla. 2018) (Point Conversions' prior case removed to this District and subsequently remanded).  Thus, in this action, Rodeway sought a declaratory judgment of non-infringement of the 174 patent against JBSHBM (Count 1) and a finding that the 174 patent is invalid (Count 2) and unenforceable (Count 3).  *See generally* (ECF No. 20).  Rodeway also sought to recover damages against JBSHBM for bad faith assertions of patent infringement, in violation of the Patent Troll Prevention Act (Count 4), and damages against Point Conversions for conspiracy to violate the Patent Troll Prevention Act (Count 5).  *Id*.

On June 8, 2018, JBSHBM filed with the Court a letter it had sent to Rodeway in which JBSHBM "convenant[ed] not to sue Rodeway for infringement of the [174 patent] under the Patent Act [then] or in the future."  *See* (ECF Nos. 22-1 at 3, 112 at 2).  On June 11, 2018, Point Conversions filed its Answer, Affirmative Defenses, and Counterclaims to Rodeway's First Amended Complaint.  *See generally* (ECF No. 23).  The counterclaims were alleged against Rodeway (the initial Plaintiff) and, for the first time, against Choice, the franchisor.  *Id.* (spanning 40 pages and 106 paragraphs). Thereafter, on July 30, 2018, Point Conversions filed its First Amended Counterclaims against Rodeway and Choice, which expanded the counterclaims (to 55 pages and 354 paragraphs).  *See generally* (ECF No. 50).

According to Point Conversions' First Amended Counterclaims, Point Conversions had the exclusive rights to the only software legally permitted to convert reward points across program boundaries. *Id.* ¶¶ 15-16. Point Conversions asserted state law claims against Rodeway and Choice under Florida's Deceptive and Unfair Practices Act ("FDUTPA") and conspiracy to violate FDUTPA, among other claims. *Id.* ¶¶ 173-338.

On October 10, 2018, the District Court dismissed Rodeway's declaratory judgment claims against JBSHBM (Counts 1, 2, and 3), concluding that the Court lacked subject matter jurisdiction. (ECF No. 112 at 5-8); *Tropical Paradise Resorts*, 2018 WL 4932282, at *4. The District Court also declined to exercise jurisdiction over Rodeway's state law claims alleging violations of the Patent Troll Prevention Act (Counts 4 and 5). (ECF No. 112 at 8-9); *Tropical Paradise Resorts*, 2018 WL 4932282, at *4.

Additionally, and relevant to the instant Motion, the District Court dismissed Point Conversions' FDUTPA counterclaims against Rodeway and Choice.[1] (ECF No. 112 at 9-11). *Tropical Paradise Resorts*, 2018 WL 4932282, at *4-5. The District Court wrote:

> The Court finds that Point Conversions' state law counterclaims necessitate a determination of patent law issues. Judge Altonaga reached a similar conclusion in remanding to state court an action involving the same nucleus of facts brought by Point Conversions against Rodeway for state law claims:
>
>> Before [Point Conversions] can obtain relief on any of its claims, a court will necessarily have to determine whether the licensed patents from JBSHBM are valid. If a court concludes [Rodeway] did not infringe [Point Conversions'] licensed patents, [Rodeway] cannot have deprived [Point Conversions] of any intellectual property right [Point Conversions] asserts, thereby defeating all of [Rodeway's] claims.
>
> *Point Conversions, LLC v. Tropical Paradise Resorts, LLC*, No. 18-cv-60809 at 5 (S.D. Fla. June 13, 2018). [In the instant action], Point Conversions' FDUTPA claims [also] require a determination of whether the patents at issue are valid to ascertain whether the value of the products Rodeway and Choice Hotels provided

---

[1] The District Court also dismissed Point Conversions' counterclaims for declaratory judgment (Counts 4 and 5). (ECF No. 112 at 11-13); *Tropical Paradise Resorts*, 2018 WL 4932282, at *5.

to their customers was diminished by the alleged "litigation liability." Accordingly, Point Conversions' state law [FDUTPA] counterclaims are preempted.

(ECF No. 112 at 10); *Tropical Paradise Resorts*, 2018 WL 4932282, at *5 (citations omitted).

On November 1, 2018, Point Conversions filed a Motion for Reconsideration of the District Court's Order dismissing Point Conversions' FDUTPA counterclaims. *See generally* (ECF No. 116). On January 2, 2019, the District Court denied Point Conversions' Motion for Reconsideration and found that "Point Conversions' FDUTPA counterclaims depend entirely on whether Rodeway and Choice Hotels infringed the patent at issue . . . . Point Conversions' FDUTPA counterclaims are merely a parallel way of enforcing patent rights." (ECF No. 134 at 5); *Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, No. 18-CV-60912, 2019 WL 78983, at *2 (S.D. Fla. Jan. 2, 2019).

On January 30, 2019, Point Conversions appealed the District Court's orders on the Motion to Dismiss and the Motion for Reconsideration to the Eleventh Circuit. (ECF No. 135). On May 26, 2020, the Eleventh Circuit affirmed per curiam the District Court's dismissal of the claims. *See generally Tropical Paradise Resorts*, 806 F. App'x at 966. In relevant part, the Eleventh Circuit found that the District Court's conclusion was "well-reasoned" in that "Point Conversions' claims arising under [FDUTPA] are preempted by patent law." *Id*.

Notwithstanding the Eleventh Circuit's affirmance of the District Court's dismissal of the claims and counterclaims, Point Conversions continued to litigate. More specifically, Point Conversions requested that the Eleventh Circuit transfer the case to the Federal Circuit (which request the Eleventh Circuit denied) and filed a motion for rehearing en banc (which the Eleventh Circuit also denied). *See Point Conversions, LLC v. Tropical Paradise Resorts, LLC*, No. 19-10553 (11th Cir. 2020) (filings dated 6/8/2020, 6/16/2020, 7/16/2020, 7/21/2020, and 7/29/2020).

Undeterred, Point Conversions subsequently filed a Petition for Writ of Mandamus before the Federal Circuit requesting that the Federal Circuit direct the District Court in South Florida to vacate

its order, or alternatively, direct the Eleventh Circuit to transfer the case to the Federal Circuit for lack of subject matter jurisdiction.  *See In re Point Conversions,* No. 20-152 (Fed. Cir. 2020) (Petition for Writ of Mandamus filed on 10/2/2020).  On November 25, 2020, the Federal Circuit dismissed Point Conversions' Petition for Writ of Mandamus.  *Point Conversions,* 830 F. App'x at 320.  The Federal Circuit found that the proper course was for Point Conversions to seek review of the Eleventh Circuit's decision in the United States Supreme Court, which has jurisdiction to review decisions by the Eleventh Circuit.[2]  *Id*.

On December 18, 2020, the instant Motion followed.  *See generally* (ECF No. 147).  In the Motion, Rodeway and Choice seek $245,955.50 in attorneys' fees and $16,037.52 in costs pursuant to FDUTPA.  (ECF No. 147 at 20, 21).  Although Point Conversions objects to the entitlement of fees and costs, it did not meaningfully challenge the amounts claimed.[3]

## II.   ENTITLEMENT TO ATTORNEYS' FEES AND COSTS UNDER FDUTPA

### A. Entitlement to Attorneys' Fees Generally

Under the "American Rule," litigants generally are not entitled to an award of attorneys' fees for prevailing in litigation unless provided by statute or contract.  *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 253 (2010) (citations omitted); *In re Martinez,* 416 F.3d 1286, 1288 (11th Cir.

---

[2] Subsequently, on February 25, 2021, the Federal Circuit denied Point Conversions' Petition for Panel Rehearing and Rehearing en Banc.  *See* (ECF No. 154).

[3] For example, in a footnote reference in its 7-page Response, Point Conversions summarily objects to certain deposition costs.  *See* (ECF No. 151 at 4 n.2).  Point Conversions, however, fails to challenge any other costs.  Moreover, Point Conversions' reference to a previously filed motion to tax costs, which the District Court denied without prejudice to refile, is insufficient to preserve its objection to the costs at issue in the current Motion.  (ECF No. 151 at 4); *see also* (ECF Nos. 117, 124, 139, 140).  Lastly, although in a subsequent Motion for Oral Argument, Point Conversions argued that it would "like the opportunity to question counsel for Choice/Tropical under oath to see how they can justify their fees/costs for certain billing entries[,]" *see* (ECF No. 155 at 5), the undersigned denied the request for oral argument as attorneys' fees and costs in this case are determinable on the record.  (ECF No. 158).  Accordingly, Point Conversions' challenge to Rodeway's and Choice's request for fees and costs is limited to whether the Counterclaim Defendants are prevailing parties entitled to an award under FDUTPA.

2005) (prevailing litigants are generally not entitled to an award of attorneys' fees unless provided by statute or contract). Here, § 501.2105 of FDUTPA provides for the discretionary award of reasonable attorneys' fees and costs to the prevailing party. *Sodikart USA v. Geodis Wilson USA, Inc.*, No. 14-CV-22461, 2014 WL 6968073, at *3 (S.D. Fla. Dec. 9, 2014) (citation omitted). More specifically, "[i]n any civil litigation resulting from an act or practice involving a violation[,] the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive [its] reasonable attorney's fees and costs from the nonprevailing party." Fla. Stat. § 501.2105(1).

### B. Rodeway and Choice are Prevailing Parties Under FDUTPA

In the Motion, Rodeway and Choice argue that they are the prevailing parties because the District Court dismissed Point Conversions' FDUTPA counterclaims and related declaratory claims, which ruling was affirmed by the Eleventh Circuit.[4] (ECF No. 147 at 10-11). Point Conversions, however, disputes whether Rodeway and Choice are prevailing parties under FDUTPA. *Compare* (ECF No. 147) *with* (ECF No. 151). More specifically, Point Conversions asserts that Rodeway and Choice are not the prevailing party because they did not prevail on the claims asserted in Rodeway's First Amended Complaint. (ECF No. 151 at 2). Relatedly, Point Conversions incorrectly argues that it was only involved in this action because Rodeway "alleged that [Point Conversions] conspired to commit violations of [FDUTPA]." *Id*. According to Point Conversions, because Rodeway and Choice did not prevail on the First Amended Complaint, they are not entitled to FDUTPA fees and costs. *Id.* at 2-3. Point Conversions further argues that the dismissal of its counterclaims was "without

---

[4] Rodeway and Choice further argue that the equitable factors for awarding fees and costs under FDUTPA weigh in favor of an award in this case. (ECF No. 147 at 11-19). That argument is addressed below. *See infra* Section C.

prejudice" and, therefore, not an adjudication on the merits that would bar a subsequent suit.[5]  *Id.* at 3 & n.1.

"[G]iven the kaleidoscope of possible outcomes in civil litigation involving multiple plaintiffs and defendants who assert multiple claims and counterclaims, deciding which, if any, party has prevailed for purposes of attorney's fees can be an uncertain proposition."  *Chow v. Chak Yam Chau*, 640 F. App'x 834, 840 (11th Cir. 2015).  Point Conversions' collective reference to Rodeway and Choice as "Defendants" further muddles the issue.  No one disputes that this federal action was commenced by Rodeway, who asserted five claims against JBSHBM and Point Conversions.  *See generally* (ECF No. 20).  None of Rodeway's claims, however, were FDUTPA claims.  To be clear, Rodeway's claims against JBSHBM and Point Conversions included federal claims for declaratory judgment (Counts 1, 2, and 3) and state law claims alleging a violation of the Patent Troll Prevention Act (Counts 4 and 5).  *See generally* (ECF No. 20); *see also* (ECF No. 112) (District Court Order dismissing Rodeway's claims).  It was Point Conversions who asserted FDUTPA *counterclaims* against Rodeway and Choice, adding Choice as a party to this action for the first time.  (ECF No. 50).  By invoking FDUTPA and seeking redress under its remedial provisions, Point Conversions "exposed

---

[5] Point Conversions also argues that the Motion was filed either too late or too early.  (ECF No. 151 at 4).  These arguments, however, are belied by the record.  First, the District Court granted the parties' joint motion for an extension of time regarding Local Rule 7.3, which governs the timing of filing motions for attorneys' fees and cost.  (ECF No. 146).  Specifically, the District Court ordered that Rodeway and Choice "shall file any motion for FDUTPA fees within *twenty-five days* of [the Federal Circuit ruling on the Petition for Writ of Mandamus.]"  *Id.* at 2 (emphasis added).  The Federal Circuit denied Point Conversions' Petition for Writ of Mandamus on November 25, 2020.  *See In re Point Conversions*, 830 F. App'x at 319.  This Motion was filed 23 days later, on December 18, 2020. Therefore, the Motion is timely.  The Motion is also not premature. The District Court's dismissal of Point Conversions' FDUTPA counterclaims and the Eleventh Circuit's affirmance and mandate became "final and unreviewable upon the expiration of the 90-day deadline for filing a certiorari petition [pursuant to] 28 U.S.C. § 2101(c)."  *Salazar v. Buono*, 559 U.S. 700, 701 (2010).  Here, the Eleventh Circuit's mandate was issued on May 26, 2020.  *See Tropical Paradise Resorts*, 806 F. App'x at 966.  Thus, the deadline to file a certiorari petition expired on August 24, 2020.  Point Conversions' subsequent unsuccessful Petition for Writ of Mandamus to the Federal Circuit does not change the relevant timing.  Accordingly, the Motion is ripe for adjudication.

[itself] to both the benefits and the possible consequences of that act's provisions." *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 369 (Fla. 2013).

Against this factual scenario and based on the governing law, the undersigned finds that Choice is the prevailing party under FDUTPA because it successfully defended against Point Conversions' FDUTPA counterclaims.   Likewise, Rodeway is also a prevailing party under FDUTPA.   Although, Rodeway was unsuccessful against JBSHBM and Point Conversions on its claims in the First Amended Complaint, Rodeway successfully defended against Point Conversions' FDUTPA counterclaims.[6]

In determining prevailing party status, courts often use the "net judgment" or "significant legal issues test."   *See, e.g., CrossPointe, LLC v. Integrated Computing, Inc.*, No. 6:03-CV-558-ORL-19JGG, 2007 WL 1192021, at \*5 (M.D. Fla. Apr. 20, 2007); *Diamond Aircraft*, 107 So. 3d at 368. But neither test is particularly useful on the facts of the instant case.   Here, because the dismissal of the claims and counterclaims did not provide a monetary award for any party, use of the "net judgment" test to determine who is the prevailing party is unfruitful.   Accordingly, the cases cited by Point Conversions regarding prevailing party status are unpersuasive.   *See, e.g.*, *CrossPointe*, 2007 WL 1192021, at \*5 (denying FDUTPA fees where litigant failed to demonstrate that it recovered a "net judgment" where both sides won and lost on significant issues in a highly contentions case); *see also Diamond Aircraft*, 107 So. 3d at 368 (citing *Heindel v. Southside Chrysler-Plymouth, Inc.*, 476 So. 2d 266, 270 (Fla. 1st DCA 1985) for the proposition that to recover attorneys' fees in a FDUTPA action, party must prevail in the litigation, i.e., recover judgment in a FDUTPA claim and recover a net judgment in the entire case).   Additionally, Rodeway's claims and Point Conversions'

---

[6] Even if Rodeway's prevailing party status could be the subject of attack, Choice was undoubtedly brought into the case by Point Conversions, and is the prevailing party on Point Conversions' FDUTPA counterclaims.

counterclaims were comparable and were all dismissed.  Thus, the "significant legal issues" test to determine prevailing party status is also inapposite.

Accordingly, the undersigned finds that Rodeway and Choice are the prevailing parties, i.e., they successfully defended against Point Conversions' FDUTPA counterclaims, which the District Court dismissed as preempted by patent law.  This ruling was affirmed by the Eleventh Circuit on appeal.[7]  *Am. Registry, LLC v. Hanaw,* No. 2:13-CV-352-FTM-29CM, 2015 WL 5687693, at *4 (M.D. Fla. Sept. 25, 2015) (noting that notwithstanding dismissal of the FDUTPA claim on the basis of preemption, defendants' status as prevailing for purposes of attorneys' fees applied because invocation of FDUTPA was sufficient to trigger benefits and consequences).  Moreover, Point Conversions did not timely appeal the Eleventh Circuit ruling to the United States Supreme Court.

**C.  Attorneys' Fees and Costs to Prevailing Counterclaim Defendants Under FDUTPA**

"Under FDUTPA, the Florida Legislature has declared that deceptive or unfair methods of competition and practices in trade and commerce are unlawful."  *Diamond Aircraft*, 107 So. 3d at 367.  Importantly, an award of attorneys' fees to the prevailing party under FDUTPA is within the Court's discretion.  *Humane Soc. of Broward Cnty., Inc. v. Florida Humane Soc.*, 951 So. 2d 966, 971 (Fla. 4th DCA 2007).  In exercising this discretion, courts consider the following non-exhaustive factors: (i) the scope and history of the litigation; (ii) the ability of the opposing party to satisfy an award of fees; (iii) whether an award of fees against the opposing party would deter others from acting in similar circumstances; (iv) the merits of the respective positions, including the degree of the opposing party's culpability or bad faith; (v) whether the claim brought was not  in subjective bad faith but [was] frivolous, unreasonable, groundless; (vi) whether the defense raised a defense mainly

---

[7] Relatedly, Point Conversions' argument that dismissal without prejudice was not an adjudication on the merits also fails.  (ECF No. 151 at 3).  Point Conversions elected to pursue its appeal.  Therefore, the order to dismiss without prejudice is considered an adjudication on the merits.  *Jackson v. Okaloosa Cty.*, Fla., 21 F.3d 1531, 1536 n.4 (11th Cir. 1994).

to frustrate or stall; and (vii) whether the claim brought was to resolve a significant legal question under FDUTPA law. *Sodikart*, 2014 WL 6968073 at *3 (citing *Humane Soc.*, 951 So. 2d at 971-72).

Presently, Rodeway and Choice seek $245,955.50 in attorneys' fees and $16,037.52 in costs. (ECF No. 147 at 20, 21, 147-1 at 7).  According to Rodeway and Choice, the discretionary factors listed above weigh in favor of an award of attorneys' fees and costs.[8]  *See generally* (ECF No. 147); *see also* (ECF No. 152).  The undersigned agrees.

> 1. *The Scope and History of the Litigation*

The first *Humane Society* factor focuses on the scope and history of the litigation.  In the Motion, Rodeway and Choice accurately summarize the two-and-a-half year extended litigation, *see* (ECF No. 147 at 14-18).  In this regard, the undersigned notes that before filing its counterclaims against Rodeway and Choice, Point Conversions knew or should have known that the FDUTPA counterclaims were preempted because those claims were predicated on the alleged infringement of the Bucheit patents.  Notably, District Judge Altonaga previously found that "[b]efore [Point Conversions] can obtain relief on any of its claims, a court will necessarily have to determine whether the licensed patents from JBSHBM are valid." *Point Conversion*, 339 F. Supp at 1355.

Next, Point Conversions also prolonged and complicated the litigation, which included Point Conversions' motion for Rule 11 sanctions against Rodeway and Choice (ECF No. 42), Point Conversions' motion for sanctions on appeal (*see In re Point Conversions*, No. 19-10553 (11th Cir. June 11, 2019)), Point Conversions' motion to transfer the appeal from the Eleventh Circuit to the Federal Circuit (*In re Point Conversions*, No. 19-10553 (11th Cir. June 8, 2020)), and motions for rehearing and reconsideration in the District Court, Eleventh Circuit, and Federal Circuit (*In re Point Conversions*, No. 19-10553 (11th Cir. June 16, 2020) and *In re Point Conversions*, No. 20-152 (Fed.

---

[8] Although Point Conversions does not address *Humane Society*'s discretionary factors, the undersigned nonetheless addresses each factor below.

Cir. Dec. 29, 2020)).  The Courts have all rejected Point Conversions' arguments.[9]  An award of FDUTPA fees and costs is warranted where the litigation "should have been simpler, but had been drawn out and made unreasonably contentious."  *Chow*, 640 Fed. Appx. at 842-43; *see also Sodikart*, 2014 WL 6968073, at *3 (noting that filing of the case multiplied and compounded the litigation and resulted in substantial additional legal expenses).  Accordingly, this factor weighs heavily in favor of an award.

> ## 2.   *Plaintiff's Ability to Satisfy an Award of Fees*

The second *Humane Society* factor considers Point Conversions' ability to pay a fee award. There is no presumption that a party can pay a fee award.  *Perez v. FCA US, LLC.*, No. 6:18-CV-1172-OrL-37TBS, 2019 WL 2931366, at *3 (M.D. Fla. June 11, 2019), *report and recommendation adopted*, 2019 WL 2929508 (M.D. Fla. July 8, 2019).  However, by "invoking FDUTPA and seeking redress under its remedial provisions," Point Conversions has "exposed [itself] to both the benefits and the possible consequences of that act's provisions."  *Diamond Aircraft*, 107 So. 3d at 369.

Here, Rodeway and Choice argue that Point Conversions is "a well-funded patent trolling venture, as evidenced by its ability to pursue this action, the Eleventh Circuit appeal, and the 47 state-court lawsuits against Choice, Rodeway, and other Choice franchisees, as well as numerous motions, petitions, writs, and appeals it has filed in almost all those cases[.]" (ECF No. 147 at 18).  Point Conversions has not challenged these assertions.  Moreover, based on the numerous federal and state court actions brought by Point Conversions, it is reasonable to conclude that Point Conversions has

---

[9] Furthermore, according to the Motion, this case is one of 47 state court actions against Choice franchisees (including Rodeway) alleging the same FDUTPA claims.  (ECF No. 147 at 3); *see also* (ECF No. 147 at 13 n.12-13) (listing cases where state courts have repeatedly found that the FDUTPA claims depend on the determination of the scope of the patents); *Lopane*, 2021 WL 328533, at * 1-5 (summarizing some of the federal and state court cases involving Point Conversions' allegations). Point Conversions has also sued a state court Judge in this District.  *Lopane*, 2021 WL 328533.

the financial ability to pay a fee award.  Accordingly, in the absence of evidence to the contrary, this factor also weighs in favor of a fee award.

### 3.  Whether a Fee Award Would Deter Others From Acting in Similar Circumstances

The third *Humane Society* factor is whether an award of fees would deter others from filing future legitimate FDUTPA lawsuits.  Here, despite the courts' repeated rejection of Point Conversions' arguments, Point Conversions has continued to pursue appellate remedies for the same FDUTPA claims that have already been rejected by federal and state courts.  A fee award would deter Point Conversions from continuing to pursue Rodeway and Choice, and other Choice franchisees, where the FDUTPA counterclaims are preempted by patent law.  *See, g., Burgos v. SunTrust Bank, N.A.*, No. 13-21197-CIV, 2020 WL 2299937, at *6 (S.D. Fla. Mar. 31, 2020), r*eport and recommendation adopted*, 2020 WL 2299936 (S.D. Fla. May 7, 2020) (awarding fees under FDUTPA to deter filing of meritless suits that have a substantial chance of wasting the parties' time and resources, including the court).

Against this backdrop, the undersigned finds that a fee award would deter Point Conversions (and others like it) from bringing frivolous claims in an attempt to circumvent patent law.[10] *See, e.g.*, *Am. Registry*, 2015 WL 5687693, at *6 (finding that an award of fees would deter others from bringing meritless claims).  Accordingly, this factor similarly weighs in favor of a fee award.

---

[10] Point Conversions' overall conduct in this case is analogous to that in *Shipping and Transit, LLC v. 1A Auto, Inc.*, 283 F. Supp. 3d 1290, 1294-95 (S.D. Fla. 2017).  Although *Shipping* involved the Patent Act and not FDUTPA, Point Conversions' conduct in filing claims that have already been found to be preempted resembles the conduct of the plaintiff in *Shipping*, who had filed scores of actions as a seemingly "calculated business strategy to secure relatively small and quick settlements from defendants who wished to avoid protracted and costly patent litigation."  *Shipping*, 283 F. Supp. 3d at1302.  Moreover, like in *Shipping*, Point Conversions provided Rodeway with a covenant not sue, which divested the Court of jurisdiction.  *Compare Shipping*, 283 F. Supp. 3d at 1295 *with Tropical Paradise Resorts*, 2018 WL 4932282 at *4.

4.   *The Merits of Parties' Positions, Including Culpability, Bad Faith, or Frivolousness*

The fourth and fifth *Humane Society* factors focus on the merits of the parties' litigation position, including the degree of the opposing party's culpability or bad faith and whether the claim was frivolous, unreasonable, or groundless.  The scope and history of this litigation, as discussed above, are relevant to this factor and are incorporated herein by reference.  *See supra* Section C.1.  Additionally, in evaluating the merits of Point Conversions' FDUPTA counterclaims, the undersigned considers the prior decisions by the Patent Trial and Appeal Board ("PTAB") that the concept of converting points is unpatentable.  *See generally Askeladden LLC v. McGhie*, No. IPR2015-00125, 2016 WL 1024996 (PTAB Mar. 11, 2016); *Askeladden LLC v. McGhi*e, No. IPR2015-00122, 2016 WL 1082803 (PTAB Mar. 17, 2016); *Askeladden LLC v. McGhie*, No. IPR2015-00137, 2015 WL 1870999 (PTAB Apr. 23, 2015).  Despite previous rulings by state and federal courts, and the PTAB findings, Point Conversions still continues to pursue FDUTPA counterclaims knowing that they are untenable.  Accordingly, the undersigned finds that factors four and five weigh heavily in favor of a fee award.

5.   *Whether the Defense Raised Was Mainly to Frustrate or Stall and Whether the Claim was Brought to Resolve Significant Legal Question*

The sixth and seventh *Humane Society* factors concern whether a defense was raised mainly to frustrate or stall and whether the claim resolved a significant legal question under FDUPTA.  As to these factors, Rodeway and Choice argue that Point Conversions attempted to "frustrate[,] stall, [and] avoid federal scrutiny of the Bucheit patents."  (ECF No. 147 at 19).  Rodeway and Choice also argue that Point Conversions' counterclaims were not brought to resolve a significant legal question as Point Conversions already knew that its FDUTPA counterclaims were preempted by patent law.  *Id*.

Based on the number of times that federal and state courts have previously rejected Point Conversions' claims, the FDUTPA counterclaims cannot be said to have been brought to resolve a

14

significant legal question or novel issue. Rather, the record in this case supports the conclusion that Point Conversions raised the FDUTPA counterclaims to frustrate and stall this litigation. Accordingly, these factors also weigh in favor of an award of fees.

In sum, the undersigned finds that the *Humane Society* factors overwhelmingly weigh in favor of a fee award to Rodeway and Choice. *Cf. Hard Rock Cafe Int'l USA, Inc. v. RockStar Hotels, Inc.*, No. 17-CV-62013, 2019 WL 3412155, at *9 (S.D. Fla. May 20, 2019), *report and recommendation adopted*, 2019 WL 3408888 (S.D. Fla. June 4, 2019) (concluding that *Humane Society* factors weighed against or were neutral on whether to award fees under FDUTPA). Thus, the Court next turns to the reasonableness of the fees and costs requested.

## III.   THE REASONABLENESS OF THE FEES AND COSTS

### A.  The Lodestar Method for Determining Attorneys' Fees

Courts in the Eleventh Circuit use the "lodestar" method to calculate the value of an attorneys' services. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Under the lodestar method, a court first determines the reasonable rate of an attorneys' services and then determines if the hours expended by counsel are reasonable. *Id.* at 1299-1302. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* at 1299. The relevant legal community is "the place where the case is filed." *ACLU v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quotations and citation omitted). The movant "bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," and "[s]atisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299. Here, the relevant legal community is South Florida.

When determining whether the number of hours expended by counsel is reasonable, the court "must deduct time spent on discrete and unsuccessful claims." *Id.* at 1302 (citing *Hensley v.*

*Eckerhart*, 461 U.S. 424, 435 (1983)).  Further, where a court finds the number of hours claimed by counsel is unreasonably high, the court may conduct an hour-by-hour analysis or reduce the requested hours with an across-the-board cut, but not both.  *Bivins v. Wrap it Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008).  Courts need not become "green-eyeshade accountants."  *Fox v. Vice*, 563 U.S. 826, 838 (2011).  The essential goal for the court is to "do rough justice, not to achieve auditing perfection."  *Id*.

Rodeway and Choice seek $245,955.50 in fees incurred for 616.80 hours expended over the two-and-a-half year litigation against Point Conversions before this Court and on appeal before the Eleventh and Federal Circuits.  (ECF No. 147 at 20).  As an initial matter, Point Conversions did not object to the reasonableness of the amount requested.  Thus, it has waived any objection to the reasonableness of the claimed fees.  *See, e.g., Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2017 WL 3536917, at *10 (S.D. Fla. Aug. 17, 2017) (concluding that party who failed to object to fee amount undoubtedly waived all arguments about the attorneys' hourly rates and the reasonableness and efficiency of counsel's time); *see also Alhassid v. Bank of Am., N.A.*, 688 F. App'x 753, 758 (11th Cir. 2017) (noting that issues not raised in the district court are waived).  Nevertheless, the undersigned has reviewed the Motion and billing records to determine whether counsel's fees are reasonable.

### 1.    *Reasonable Hourly Rates*

In determining reasonable hourly rates in South Florida, the undersigned may also consider certain factors, including "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases."  *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (citing factors articulated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.

1974) (the "*Johnson* factors")).  The Court also may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses.  *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (quoting *Norman*, 836 F.2d at 1303).

Here, Rodeway and Choice seek an award for the legal services of several timekeepers at the law firm of Reed Smith, LLP.  *See generally* (ECF No. 147-1 at 2-15).  The individual timekeepers, their requested hourly rates, and hours expended are summarized below.

| Timekeeper | Years of Experience/ Position | Hourly Rate[11] | Hours Expended |
|---|---|---|---|
| Edward M. Mullins | 30 year Partner/commercial litigation | $490.50 | 75.3 |
| Ana Maria Barton | 10 year associate/commercial litigation | $354.72 | 398.2 (combined hours) |
| Daniel Alvarez Sox | 8 year associate/commercial litigation | $373.50 | |
| John P. Bovich | 30 year lawyer/IP/commercial litigation | $841.50 | 2.1 |
| David Pollock | 19 year lawyer/patent | $787.50 | 29.6 |
| Andrew M. Levad | 4 year associate | $405.00 | 60.9 |
| Christina D. Olivos | 5 year associate | $337.50 | .3 |
| Marian G. Kennady | 20 years of experience/staff attorney | $171 | 7.3 |
| Kevin Hernandez | 9 years of experience/paralegal | $247.50 | 32.3 |
| Sofia Bustillos | 10+ years of experience/paralegal | $225 | 7.2 |
| Cynthia Benavides | 20+ years of experience/paralegal and client technology | $202.50 | 3.6 |

*See* (ECF No. 147-1 at 3-7).

At first blush, some of the hourly rates appear high for the South Florida community.  *See, e.g.*, the hourly rates for attorneys Bovich and Pollock at $787 and $841, respectively.  That said, the undersigned recognizes that patent and intellectual property are specialized areas of law, which continue to command high attorney rates in South Florida.  *See, e.g., Shipping*, 283 F. Supp. 3d at 1304 (recommending an award in 2017 at hourly rates of $830 and $530, respectively, in a patent litigation case).  Further, Point Conversions has failed to provide any evidence challenging the

---

[11] The rates reflected are as discounted by counsel.  In the Notice of Previously Awarded Fees, counsel references a separate case where it has sought a blended hourly rate of $425/hr.  (ECF No. 160 at 2 n.2). That rate, however, is not relevant to the instant Motion.

reasonableness of the requested hourly rates.  In the absence of an objection and based on the undersigned's own expertise, the Court finds counsel's discounted hourly rates to be reasonable for the South Florida community.  *See, e.g., Domond v. PeopleNetwork APS,* 750 F. App'x 844, 848 (11th Cir. 2018) (affirming district court award of $645 to $675/hr for partners); *CBRE, Inc. v. Capital Com. Real Estate Group, Inc.*, No. 19-61235-CIV, 2019 WL 7708503, at *2 (S.D. Fla. Oct. 10, 2019), *report and recommendation adopted*, 2019 WL 7708499 (S.D. Fla. Oct. 28, 2019) (awarding $585/hr for 26-year partners, $360 for six-year associate, $185 for paralegal).

Moreover, as noted above, in determining reasonable hourly rates the undersigned may also consider the attorneys' customary fee, the skill required to perform the legal services, and the attorneys' experience, reputation and ability.  *Mallory*, 923 F. Supp. at 1555.  Lastly, the Court is "deemed an expert on the issue of hourly rates in this community and may properly consider 'its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.'"  *Fiedler v. Anglin's Beach Café, LLC*, No. 15-60989, 2017 U.S. Dist. LEXIS 189449, 2017 WL 1278632, at *1 (S.D. Fla. April 3, 2017) (quoting *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)).

Accordingly, based on their experience, qualifications, and the prevailing market rates in South Florida (including their experience in intellectual property and patent law), the undersigned recommends that counsel for Rodeway and Choice receive the hourly rates requested.

### 2.    *Reasonable Hours Expended*

Having determined counsel's reasonable hourly rates, the undersigned next determines the reasonableness of the hours expended by the attorneys working on the case.  As a general rule, attorneys must exercise what the Supreme Court has termed "billing judgment."  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  That means they must exclude from fee applications "excessive, redundant, or otherwise unnecessary hours," which are hours "that would be unreasonable to bill to a

client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Norman*, 836 F.2d at 1301 (quotations and citations omitted).

Importantly, "if fee applicants do not exercise billing judgment, courts are obligated to do it for them." *ACLU*, 168 F.3d at 428.  The fee applicant also bears the burden of providing specific and detailed evidence so that the court can determine the necessity and reasonableness of the time claimed for the action.  *Id*. at 427, 432-33.  In the end, however, "exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court."  *Norman*, 836 F. 2d at 1301.

The Court has reviewed counsel's billing records, consisting of almost 250 heavily-redacted pages.  *See* (ECF No. 147-1 at 16-246).  Although some redaction may have been necessary to exclude non-compensable tasks, it hinders the Court's evaluation of the time spent by counsel and may prevent an assessment of the specific tasks performed.  *See, e.g.*, *Shipping*, 283 F. Supp. 3d at 1305 (recommending minor redaction for overly redacted records).  Moreover, a review of the unredacted items reveals certain billing inefficiencies, which require adjustment.  More specifically, a few of the time entries include instances of inappropriate "block billing."  "Block billing" is the practice of including multiple distinct tasks within the same time entry.  *Interim Healthcare, Inc. v. Health Care@Home, LLC*, No. 17-CV-61378, 2019 WL 6791465, at *6 (S.D. Fla. Nov. 27, 2019), *report and recommendation adopted*, 2019 WL 6769666 (S.D. Fla. Dec. 12, 2019).  To illustrate, without indicating how much time was spent on each task, the one hour time entry for 6/26/2018 for attorney Baron reflects "[r]eview correspondence with client regarding mediation; review Choice Hotels waiver of service filed by Point Conversions; review scheduling order entered by court; review discovery requests served by Points on Rodeway; confer with Point's counsel regarding enlargement of time on Rodeway's response to counterclaim."  (ECF No. 147-1 at 24).  Similarly, the entry of 7/31/2018 for 5.1 hours for attorney Pollock reflects "[a]nalyze amended counterclaims and

documents attached thereto; prepare for and attend team meeting; review discovery; investigate facts re: counterclaims and share with team; review new patents and claims, order FHs." *Id.* at 40.

Moreover, there are some entries of such exactness and length that it is difficult for the Court to determine whether they accurately reflect the tasks performed. For example, on consecutive days 8/29/2018 and 8/30/2018, attorney Levad expended exactly 5.5 hours each day related to work on a joint reply in support of a motion to dismiss the counterclaims. *Id.* at 66-67. Although the entries describe research and drafting, there is no distinction between the time spent on each task during the 5.5 hours expended on consecutive days. Similarly, on 5/23/19, attorney Sox edited, finalized, and filed an Eleventh Circuit brief, for 11.20 hours. *Id.* at 156. Although the undersigned appreciates that law firm practice may require long work hours, one 11+ hour entry with no distinction between the specific tasks performed hinders the Court's evaluation of whether the time spent on the tasks was reasonable.

While the undersigned does not doubt that counsel worked in good faith on the projects attributed to this case, the Court must be able to verify the need or relatedness of those projects before it can approve payment for the time incurred. *Interim Healthcare*, 2019 WL 6791465, at *6 (citation omitted). Because of block billing and lengthy time entries, however, it is impossible for the undersigned "to ascertain how much time was spent on each task." *Dial HD, Inc. v. ClearOne Commc'ns, Inc.*, 536 F. App'x 927, 931 (11th Cir. 2013); *see also Maiden Specialty Ins. Co. v. Three Chefs and a Chicken, Inc*., No. 12-22724-CIV, 2014 WL 11429052, at *10 (S.D. Fla. Jan. 28, 2014), *report and recommendation adopted*, 2014 WL 11429053 (S.D. Fla. Mar. 13, 2014) (reducing fees for block billing where court was unable to determine if the amount of time spent on each task was reasonable); *Estrada v. Alexim Trading Corp.*, No. 10-23696-CIV, 2012 WL 4449470, at *11 (S.D. Fla. Sept. 26, 2012) (reducing hours for block billing, where counsel failed to separate the entries to

allow the court to properly determine whether a reasonable amount of time was spent reviewing a particular filing as opposed to conferring about the filing).

For the foregoing reasons, the undersigned concludes that a minor reduction in the requested fees is appropriate. Rather than conducting an hour-by-hour analysis of counsel's time entries, the undersigned recommends an across-the-board 5% reduction to the fees requested to account for counsel's minor instances of block billing. *See, e.g., Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.,* No. 15-CV-62688, 2021 WL 1092214, at *6 (S.D. Fla. Mar. 4, 2021), *report and recommendation adopted,* 2021 WL 1089895 (S.D. Fla. Mar. 22, 2021) (recommending a 5% reduction for block billing)*; Interim Healthcare,* 2019 WL 6791465, at *6 (recommending a 10% reduction for billing inefficiencies); *Ovalle v. Perez,* No. 16-CV-62134, 2017 WL 7792719, at *2 (S.D. Fla. Nov. 9, 2017), *report and recommendation adopted,* 2017 WL 7796183 (S.D. Fla. Nov. 30, 2017) (adopting a 10% reduction for use of block billing, redacted time entries, and redundancy); *Shipping,* 283 F. Supp. 3d at 1290 (adopting 15% reduction in fees based on billing inefficiencies); *Rubenstein v. Fla. Bar,* No. 14-CV-20786, 2015 WL 1470633, at *4-6 (S.D. Fla. Mar. 31, 2015), *report and recommendation adopted,* 2015 WL 11216722 (S.D. Fla. Apr. 22, 2015) (adopting a 30% reduction to counsel's hours for use of block billing); *see also Bivins,* 548 F.3d at 1350 (noting that when the number of hours claimed is unreasonably high, a court may conduct an hour-by-hour analysis or may reduce the requested hours with an across-the-board cut). Consequently, the undersigned recommends that Rodeway and Choice be awarded $233,657.73 in attorneys' fees.[12]

---

[12] This amount consists of $245,955.50 (the fees requested) x .95 = $233,657.73 (reflecting 5% reduction for billing inefficiencies). *See Dial HD*, 536 F. App'x at 931 (noting that where an hour-by-hour review is impractical, the Court can reduce either the total number of hours or the lodestar amount).

**B.  Costs Pursuant to FDUPTA**

Rodeway and Choice seek $16,037.52 in costs for defending against the FDUTPA counterclaims in the District Court, on appeal to the Eleventh Circuit, and in the Federal Circuit. (ECF No. 147-1 at 15).  Under FDUTPA, a prevailing party may recover its reasonable costs.  *Chow*, 640 F. App'x at 844 (affirming award of all costs incurred in FDUTPA litigation).

Although in their Motion, Rodeway and Choice summarily state the amount of costs and indicate that the costs are "reflected in the billing records," they fail to identify where the costs appear within the 250+ pages of records and (with the exception of one item discussed below) do not provide detail about the costs incurred.  Nevertheless, the undersigned scoured the billing records to find support for the claimed costs.  *See, e.g.*, (ECF No. 147-1 at 89) (listing transcript costs of $1,178 and $4,045.54); *Id*. at 102 (listing $2,275 cost for transcript and $242.40 for duplicating, printing, scanning); *Id*. at 227, 238, 246 (costs for Westlaw legal research of $1,161.30, $730.20, $808.80). Furthermore, in Reply to the Motion, Rodeway and Choice explain the transcript costs of $1,178 and $4,045.54.  (ECF No. 152 at 3).  According to Rodeway and Choice, these transcript costs were "related to establishing and defending against the FDUTPA counterclaims."  (ECF No. 152 at 3). Rodeway and Choice also indicate that the remaining uncontested costs are "reasonable related to their defense of the FDUTPA counterclaims, and properly awarded under FDUTPA, even if not taxable under 28 U.S.C. § 1920."  *Id.* at 4.

Accordingly, although the description for the costs incurred was less than desired, FDUTPA allows for the recovery of all reasonable costs.  Here, in the absence of a meaningful objection, based on Rodeway and Choice's representation that the costs were "reasonable related to their defense of the FDUTPA counterclaims," and based on the support in the billing records, the Court should award the full amount of $16,037.52 in costs.

## IV.    **RECOMMENDATION**

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that Plaintiff/Counterclaim Defendant Tropical Paradise Resorts LLC and Counterclaim Defendant Choice Hotels International, Inc.'s Motion for Prevailing Party Fees and Costs Pursuant to Florida's Deceptive and Unfair Trade Practices Act (ECF No. 147) be **GRANTED IN PART AND DENIED IN PART**.   Counterclaim Defendants should be awarded $233,657.73 in attorneys' fees and $16,037.52 in costs.

Within **fourteen (14)** days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District.  28 U.S.C. § 636(b)(1); S.D. Fla. Mag. J. R. 4(b).  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1 (2020); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on April 30, 2021.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc:  U.S. District Judge Beth Bloom
All Counsel of Record